David **HAMBLIN**, Petitioner,

v.

Carl **ANDERSON**, Warden Mansfield Correctional Institution, Respondent.

No. 1:95CV2046.

United States District Court, N.D. Ohio.

Nov. 6, 1996.

Kathleen A. McGarry, Office Of The Public Defender, Ohio Public Defender Commission, Columbus, OH, George C. Pappas, Jr., Law Offices Of George C. Pappas, Akron, OH, for David Hamblin.

Michael L. Collyer, Office of Assistant Attorney General, Cleveland, OH, for Carl Anderson.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

On November 14, 1995, David Hamblin filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence of death in the Cuyahoga County Court of Common Pleas.

In the interim, President Clinton signed into law on April 24, 1996, Title I of the "Antiterrorism and Effective Death Penalty Act of 1996," Pub.L. 104–132, 110 Stat. 1214, ("the Act") which significantly alters the statutory framework that governs the availability of habeas corpus relief. Sections 101, 102, 103, 104, and 106 of Title I amend existing statutory provisions 28 U.S.C. §§ 2244, 2253, 2254 and Fed.R.App.Proc. 22 ("the Amendments") which control the federal courts' consideration of any state prisoner's petition for a writ of habeas corpus. Section 107 creates a new Chapter 154 under Title 28 of the United States Code, and establishes ·special habeas corpus procedures applicable to capital cases originating in states that comply with the new chapter's prescribed mechanism for appointment and funding of counsel. Chapter 154 offers a system of expedited review to states that qualify under either of two "opt-in" procedures: (1) the "post-conviction" procedure codified in 28 U.S.C. § 2261 or (2) the "unitary review" procedure codified in 28 U.S.C. § 2265.

Respondent argues that Congress intended the Amendments to apply to cases *pending* on the date of the statutes' enactment and, therefore, should govern this action. Respondent further argues that Ohio qualifies as an "opt in" state under 28 U.S.C. § 2261, and thus, Chapter 154 should govern this action as well. For the reasons set forth below, the Court disagrees with each position and holds that neither Chapter 154 nor the Amendments shall be applied in this action.

### CHAPTER 154

Title I essentially establishes a "quid pro quo arrangement under which states are accorded stronger finality rules on federal habeas corpus review in return for strengthening the right to counsel for indigent capital defendants." House Comm. on the Judiciary, Effective Death Penalty Act of 1995, H.R.Rep. No. 23, 104th Cong., 1st Sess. at 10 (1995) ("House Report") (Although the House issued this report in connection with the proposed 1995 Act, the relevant portions of the proposed 1995 Act are identical to the legislation signed into law.). Title I seeks to create an incentive for states to provide competent counsel throughout state collateral review, recognizing that such counsel is "crucial to ensuring fairness and protecting the constitutional rights of capital litigants." Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, Report on Habeas Corpus in Capital Cases, 45 Crim.L.Rep. (BNA) 3240 (Sept. 27, 1989) ("Powell Committee

Report"); *See also* 137 Cong.Rec. at § 3220 (March 13, 1991) (Section-by-Section Analysis of the Comprehensive Violent Crime Control Act of 1991) ("1991 Analysis"). In exchange for adequately providing such competent counsel, Congress offers states a mechanism for ensuring expedited and final review of federal habeas corpus petitions. House Report at 10; Powell Committee Report at 3240, 1991 Analysis, at § 3220.

Title I's expedited procedures are available exclusively to states that have a capital case process in conformity with 28 U.S.C. § 2261, which provides, in pertinent part:

(a) This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence. It shall apply only if the provisions of subsections (b) and (c) are satisfied.

(b) This chapter is applicable if a State establishes by statute, rule of court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

(c) Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in subsection (b) must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—

(1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with the understanding of its legal consequences; or

(3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

The statutory mechanism that provides counsel for indigent defendants in Ohio is codified in the Public Defender Act, Revised Code Chapter 120. Although the Public Defender Act has been judicially interpreted to provide a statutory entitlement to counsel during post-conviction proceedings, the statute's own discretionary language prevents Ohio from "opting-in" to Chapter 154.

▪ R.C. § 120.16(A)(1) provides, in pertinent part, "the county public defender *shall* provide legal representation to indigent adults and juveniles . . . in post-conviction proceedings as defined in this section." Ohio Rev.Code Ann. § 120.16(A)(1) (Banks–Baldwin 1984) (emphasis added). The Supreme Court of Ohio has interpreted the legislators' use of the mandatory term "shall" to create a statutory entitlement to counsel in post-conviction proceedings. *State v. Crowder*, 60 Ohio St.3d 151, 152–153, 573 N.E.2d 652, 654 (1991).

▪ However, this statutory authorization to provide counsel is *contingent* upon a determination by the public defender that the proceeding has arguable merit, and hence, does not insure that an indigent prisoner who requests the appointment of counsel will be represented in the post-conviction stage. R.C. § 120.16(D) provides that "the county public defender shall not be required to prosecute any appeal, post-conviction remedy, or other proceeding, unless he is first satisfied there is arguable merit to the proceeding." Ohio Rev.Code Ann. § 120.16(D) (Banks–Baldwin 1984). The Supreme Court in *Crowder* recognized that, "[t]he General Assembly has provided the public defender with *the authority and discretion to refuse to represent an indigent petitioner seeking post-conviction relief,* if the public defender, after examining the issues raised by the petitioner, concludes that the issues do not have arguable merit." *Crowder* at 152–153, 573 N.E.2d at 654. (emphasis added).

The Supreme Court concluded:

[W]e believe that although an indigent petitioner does not have a state or a federal constitutional right to representation by an attorney in a post-conviction proceeding, the petitioner, pursuant to R.C. 120.16(A)(1) and (D), is entitled to representation by a public defender at such a proceeding if the public defender concludes that the issues raised have arguable merit.

*Crowder* at 153, 573 N.E.2d at 654.

Respondent assures this Court that the Public Defender Commission has never invoked the "arguable merit" provision to deny counsel to an indigent defendant. (Respondent's Motion at 4.) However, the right of the public defender to deny counsel to an indigent post-conviction petitioner is statutorily authorized. This authority, placed in the hands of the public defender, violates the mandate of § 2261(c), which requires "opt-in" states to offer counsel, by statute, to "*all* State prisoners under capital sentence." 28 U.S.C. § 2261(c) (1996) (emphasis added).

Finally, when a public defender does represent an indigent client, under the provisions of the Public Defender Act, he or she does not do so by virtue of "an order by a court of record" as mandated by 28 U.S.C. § 2261(c). *Id.*

The Report on Habeas Corpus in Capital Cases explains this technical requirement:

[The state mechanism] must provide for the entry of an appropriate judicial order based on the state prisoner's response to the offer of counsel. Judicial control of this process is necessary to establish a clear point in time to determine the applicability of sections 2257 and 2258. It is also necessary to assure that a full record exists showing which state prisoners have appointed counsel and which do not.

Powell Committee Report at 3242.

Congress could have made Chapter 154 applicable to all states, regardless of their provision of competent counsel to state prisoners for state collateral review. Instead, Congress entrusted the federal judiciary with the responsibility and obligation for determining whether their state's provision of counsel complies with Chapter 154. *See* Powell Committee Report at 3242. ("[I]t is

more consistent with the federal-state balance to give the States wide latitude to establish a mechanism that complies with subsection (b). The final judgment as to the *adequacy* of any system for the appointment of counsel, however, rests ultimately with the federal judiciary ... [T]he adequacy of the system—as opposed to the competency of particular counsel—can be settled through litigation.")

Although the Supreme Court of Ohio has recognized a statutory entitlement to counsel in post-conviction proceedings provided by the Public Defender Act, this right to counsel is not absolute. The entitlement to counsel is made contingent, by statute, upon the discretion of the public defender. Although Respondent argues that this discretion is never exercised, the permissive authority of the public defender to deny counsel to indigent petitioners in post-conviction proceedings is codified in Ohio law. This statutorily-granted power in the hands of the public defender, coupled with the state's failure to appoint counsel by an entry of an order by a court of record prevents Ohio from "opting-in" to the expedited procedures of Title I.

■ In reaching this conclusion, this court is forcefully guided by the introductory paragraph of Chapter 154 which states, "This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence. It shall apply *only if the provisions of subsections (b) and (c) are satisfied.*" 28 U.S.C. § 2254(a) (1996). (emphasis added). The court's decision is governed by the principle that Congress did not write Chapter 154 in terms of substantial compliance.

Therefore, Ohio's Public Defender Act fails to fulfill the general Congressional intent or follow the specific procedural structure set forth in 28 U.S.C. § 2261(b) and (c) and consequently this Court shall not apply Chapter 154 to this action.

### THE AMENDMENTS

■ Although certain sections of the Act contain effective date provisions, neither the Act as a whole nor the Amendments contain such a provision. In contrast, Congress ex-

plicitly set forth a specific date for the application of Chapter 154. Section 107(c) of the Act states "Chapter 154 of title 28, United States Code ... shall apply to cases pending on or after the date of enactment of this Act." 28 U.S.C. § 2266(c) (1996).

The Supreme Court set forth standards to be applied when deciding whether a statute should be applied retroactively or prospectively in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). "When a case implicates a federal statute enacted after the events in a suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." *Id.* at 263, 114 S.Ct. at 1505.

A review of the Act as a whole indicates that Congress has clearly expressed its intent. The effective date provision in Chapter 154 demonstrates that when Congress intended a chapter of the Act to operate on pending cases from the date of enactment, Congress codified that intention. 28 U.S.C. § 2266(c) (1996). The absence of an effective date provision for the Amendments indicates that Congress did not intend for these statutes to apply to petitions which were pending on the date of enactment.

Two Circuit courts which have been confronted with this issue have held that the Amendments do not apply to pending cases. *Boria v. Keane,* 90 F.3d 36, 38 (2nd Cir. 1996); *Edens v. Hannigan,* 87 F.3d 1109, 1111–1112, n. 1 (10th Cir.1996).

The Second Circuit stated:

> ... While Congress has spoken clearly in some portions of the new statute with respect to the application of the statute to pending cases, *see e.g.* § 107(c) (applying amendments to death penalty habeas cases "to cases pending on or after the date of enactment of the Act"), § 211 (applying new provisions relating to restitution "*to* the extent constitutionally permissible ... in cases in which the defendant is convicted on or after the date of enactment"), § 903(c) (relating to representation fees in criminal cases), in the context of non-capital habeas cases the statute's silence is

> striking. This silence, coupled with the presumption against retroactivity, leads us to hold that the new statute does not apply to this case ...

*Boria* at 38.

This court is convinced that the intent of Congress is clear with respect to the application of the Amendments to cases pending on the date of the statutes' enactment. By including effective date provisions in select sections of the Act, Congress obviously intended prospective application for those statutes without such provisions. Therefore, the Court finds that Congress did not intend the Amendments to govern cases pending on the date of enactment.

### CONCLUSION

For the reasons set forth above, the Court finds that neither Chapter 154 nor the Amendments of Title I of the "Antiterrorism and Effective Death Penalty Act of 1996" govern this action. Accordingly, Respondent's Motion for a Court–Finding that Title I of the "Antiterrorism and Effective Death Penalty Act of 1996" applies in this action (Dkt. # 27) is **DENIED.**

**IT IS SO ORDERED.**