**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 95-20871**

**BOBBY JAMES MOORE,**

**Petitioner-Appellant,**

**VERSUS**

**GARY L. JOHNSON, Director, Texas Department of**
**Criminal Justice, Institutional Division,**

**Respondent-Appellee.**

Appeal from the United States District Court
for the Southern District of Texas

December 6, 1996

Before GARWOOD, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this capital case, the Director of the Texas Department of Criminal Justice, Institutional Division appeals from an order by the district court which reverses the judgment of the state trial court, grants Petitioner Moore habeas corpus relief, and remands the case for a new punishment hearing. Applying the new provisions of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996, we reverse the judgment of the district court and render judgment denying Moore's petition for writ of habeas corpus.

on the afternoon of April 25, 1980, 72-year-old James "Jim" McCarble was shot in the head and killed while working as a sales associate at the Birdsall Super Market in Houston, Texas. Prior to the shooting, McCarble and co-employee Edna Scott were working inside the store courtesy booth when three men, later identified as Willie Koonce, Everett Anthony Pradia, and Bobby Moore, entered the store. Koonce entered the courtesy booth with a bag and said to McCarble, "Fill it up, man. You being robbed." McCarble then jumped to the left of Scott which allowed Scott to see Moore, who was apparently wearing a wig and facing Scott with a shotgun. Scott shouted that a robbery was in progress and she dropped to the floor of the courtesy booth. A gun shot sounded and McCarble, having received a fatal wound to the head, fell to the floor beside Scott. Koonce and Moore fled the store together losing both the money bag and the wig during their escape. Pradia had fled the store sometime before Koonce and Moore. A store customer saw the three men get into a car and drive away. The customer noted the license plate number of the car. The car was traced to Koonce who was later arrested while driving it.

At trial, two store employees testified. One of the employees, Deborah Salazar, identified Moore as the man who shot McCarble. Another employee, Arthur Moreno, testified that he saw Moore and Koonce flee the store and drop the bag and wig. Moreno recovered both the bag and wig and gave them to the store owner

who, in turn, gave them to the police. The bag was found to contain a purchase receipt which was traced to the home of Betty Nolan.

The police searched Nolan's home and discovered that Moore was living at this address. A shotgun similar to the one used in the robbery was found under Moore's bed.

After turning himself in to the police, co-defendant Pradia entered into a plea agreement and testified that he, Moore, and Koonce had planned and committed the robbery. Pradia testified to the details of the robbery and further testified that, after the robbery, Moore admitted to him that Moore had shot McCarble.

Upon information, Moore was arrested at his grandmother's house in Coushatta, Louisiana. Moore was returned to Houston where he gave what the prosecution claims is his written confession. At trial, however, Moore took the stand and testified that he had never written a confession. He testified that, after being hit in the face and jaw by the police, he was forced to sign two blank white sheets of paper upon which his alleged confession was later typed.[1] Moore testified that he signed the blank confession papers after a police officer told him that, if he did, he would be released "within 74 minutes." Moore testified that the signatures on the blue confession sheets were forgeries. The trial court admitted portions of Moore's written confession into evidence.

---

[1] The written confession offered by the prosecution is on blue paper.

3

At trial, Moore was represented by Houston attorneys Al Bonner and C. C. Devine.[2]  Moore's defense was premised upon his alibi that he did not shoot McCarble because he was in Louisiana at the time of the robbery.  At the guilt-innocence phase, the jury found Moore guilty as charged.  At the sentencing phase, the jury answered the special questions in the affirmative and the court sentenced Moore to death.

**PROCEDURAL HISTORY**

Moore's conviction was affirmed by the Texas Court of Criminal Appeals, *Moore v. State*, 700 S.W.2d 193 (Tex. Crim. App. 1985); he was scheduled to be executed on February 26, 1986.  On February 21, 1986, the Supreme Court denied Moore's petition for certiorari and application for stay of execution.  *Moore v. Texas*, 106 S. Ct. 1167 (1986).

On February 24, 1986, Moore filed his first application for writ of habeas corpus in state court.  The Texas Court of Criminal Appeals denied the writ.  On February 25, 1986, Moore filed a motion for a stay of execution and a petition for writ of habeas corpus in federal district court.  The district court granted Moore's stay of execution.  On June 19, 1987, the federal district court dismissed Moore's petition without prejudice to allow Moore the opportunity to properly present all of his claims in state court.  (Moore's petition to the federal district court apparently contained at least one unexhausted claim.)

---

[2]  Devine died shortly after the trial.

4

On April 6, 1992, Moore filed his second application for state habeas relief. On April 23, 1993, the state trial court conducted a post-conviction evidentiary hearing regarding Moore's claim of ineffective assistance of counsel. After the evidentiary hearing, the state trial court entered findings of fact and conclusions of law stating that Moore had failed to show ineffective assistance of counsel. On October 4, 1993, the Texas Court of Criminal Appeals denied Moore's application for writ of habeas corpus.

On October 12, 1993, Moore filed a second petition for federal habeas relief. The federal district court denied Moore's request for an evidentiary hearing but then held that Moore had received ineffective assistance of counsel at the punishment phase of his trial. The district court reversed the judgment of the state trial court only as to punishment and remanded Moore's case to the 185th Judicial District Court of Harris County, Texas for a new punishment hearing. The Director now appeals from this order.[3]

## DISCUSSION

This appeal requires us to address two issues: (1) do the amended standards of review found within § 104(d) of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") apply to our determination of this case, and (2) did Moore satisfy the requirements of § 104(d) as to his claim of ineffective

---

[3] Gary Johnson, the Director of the Texas Department of Criminal Justice, Institutional Division, maintains custody of Bobby James Moore pursuant to a judgment and sentence from the 185th Judicial District of Harris County, Texas.

assistance of counsel at the punishment phase of his trial.  For
the following reasons, we hold that the standards of review found
within § 104(d) of the AEDPA do apply to our determination of this
case and, under those standards, Moore did not show that he is
entitled to habeas corpus relief on the basis of ineffective
assistance of counsel.

*APPLICABILITY OF § 104(d)*

While the appeal was pending, the President signed into law
the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L.
No. 104-132, 110 Stat. 1214 (1996).  Title I of the AEDPA contains
a series of amendments to existing federal habeas corpus law, many
of which affect the manner in which federal courts can review an
inmate's petition for habeas corpus relief.  Included among these
provisions is § 104(d) which amends 28 U.S.C. § 2254(d) and places
further restriction upon the ability of federal courts to grant
habeas corpus relief.  Section 104(d) reads as follows:

> (d) An application for a writ of habeas
> corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1) resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established
> Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was
> based on an unreasonable determina-tion
> of the facts in light of the evidence
> presented in the State court proceeding.

6

AEDPA, § 104(d) (to be codified at 28 U.S.C. § 2254(d)). Subsection 104(d), thus, precludes federal courts from granting habeas corpus relief to state prisoners as to any claim that was adjudicated on the merits in a state court proceeding, unless one of its two express requirements is satisfied. Because 28 U.S.C. § 2254(d) was amended by § 104(d) after Petitioner's trial and during appeal of this habeas proceeding, we must determine whether the new standards of review created by § 104(d) apply to the instant appeal. Because Texas is not yet eligible to take advantage of the provisions for expedited procedures found within § 107 of the AEDPA, the amended standards of review found therein do not apply to Moore's case. *Mata v. Johnson*, 1996 WL 640508, *4 (5th Cir. 1996).

In *Landgraf v. USI Film Products*, 114 S. Ct. 1483 (1994), the Supreme Court clarified the analysis through which courts are to determine whether retroactive application of a law is appropriate. First, we must determine whether Congress has clearly expressed an intent that the relevant provision of the statute be applied retroactively. *Landgraf*, 114 S. Ct. at 1505. ("[A] requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id*. at 1498.) If Congress has clearly expressed an intention that a statute be applied retroactively, then the statute should be construed in accordance with that intent. *Id*. at 1505. If there is no clear congressional expression of retroactivity, then we must

7

look to the nature of the statute presented. *Mendez-Rosas v. INS*, 87 F.3d 672, 673 (5th Cir. 1996) (interpreting the *Landgraf* retroactivity analysis).

The AEDPA, which contains more than 100 pages, is organized by Title, Section, and Sub-Section. Because there is no one effective date which governs all of the provisions within the AEDPA, we must look to each individual section within the AEDPA to see if that particular section contains a clear Congressional expression addressing retroactive application. In the instant case, we must determine whether Congress has clearly expressed an effective date for application of § 104(d). After carefully reviewing § 104(d), Title I, and the AEDPA, we hold that Congress has not expressly provided an effective application date for § 104(d).[4] *Drinkard v. Johnson*, 1996 WL 571122 (5th Cir. 1996).

Because Congress has not expressly provided an effective date for § 104 (d), we must look to the nature of the statute. If the statute affects the substantive rights of the parties (i.e., impairs rights a party possessed when he acted, increases a party's liability for past conduct, or imposes new duties with respect to transactions already completed), it is deemed to have a

---

[4] We note that § 107 of the AEDPA, which amends Title 28 of the United States Code by inserting "Chapter 154-Special Habeas Corpus Procedures in Capital Cases," does contain an effective date provision, which reads: "Chapter 154 of Title 28, United States Code (as added by subsection (a)) shall apply to cases pending on or after the date of enactment of the Act." However, this effective date provision only governs as to those amendments found within § 107 (to be codified at 28 U.S.C. §§ 2261-2266). It does not provide an effective date for those amendments found within § 104.

"retroactive effect" and we presume that the statute is not to be applied retroactively unless Congress so specifies. *Landgraf*, 114 S. Ct. at 1505. However, if the statute addresses jurisdictional or procedural rules, we presume that it is to be applied retroactively unless Congress otherwise specifies. *Id*. at 1501-02.[5] Rebuttal of this presumption requires some finding that the procedural nature of this statutory change curtailed one or more of Petitioner's substantive rights. *Mendez-Rosas*, 87 F.3d at 676.

In *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), also a capital habeas corpus petition, we recently addressed the issue of whether the amended standard of review found within § 104(d) applies retroactively to habeas corpus appeals which were pending when the AEDPA was enacted. In applying the *Landgraf* retroactivity analysis, we concluded that it does. Specifically, we held that,

> the change in law at issue here has no plausible connection to Drinkard's conduct on the night of the murder. Drinkard cannot argue that the new standards of review attach new legal consequences to that conduct by increasing his liability for that conduct or by imposing new duties on him based on that conduct. In other words, Drinkard obviously cannot argue that he relied on the existence of federal <u>de novo</u> review of claims adjudicated on the merits in state court proceedings the night he killed his three victims.

---

[5] The jurisdictional exception to the presumption against retroactivity is appropriate because application of a new procedural rule usually "takes away no substantive right but simply changes the tribunal that is to hear the case." *Landgraf*, 114 S. Ct. at 1502. The procedural exception to the presumption against retroactive application is generally appropriate because of "diminished reliance interests" in procedural changes. *Id*. at 1502. The fact that a new procedural rule was instituted after the conduct giving rise to the suit does not, itself, make retroactive application of the rule improper because rules of procedure regulate secondary rather than primary conduct. *Id*.

9

> This provision instead speaks to the power of the
> federal courts to grant habeas relief to state
> prisoners.

*Drinkard*, 1996 WL 571122, *12. We concluded that, "[a]s standards of review governing our own review of Drinkard's appeal, subsection (d)(1) is easily classified as procedural in nature." *Id*., <u>citing</u> *United States v. Mejia*, 844 F.2d 209, 211 (5th Cir. 1988) (citation omitted) ("A change in the standard of review is properly characterized as procedural rather than substantive because it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial."). Accordingly, we held that "the change in procedural rules governing federal habeas review raises no concerns of retroactivity." *Drinkard*, 1996 WL 571122, *12.

Having found that § 104(d) should apply, we next examined whether such an application would deny Drinkard a substantive right. Because the new rule involves federal standards of review of state court decisions, we held that Drinkard must be able to show that he relied to some extent upon the former federal standards of habeas review in making strategic, tactical, or other decisions during the state court litigation. We held that he could not. In so finding, we concluded that,

> Drinkard cannot argue credibly that he would have
> proceeded any differently during his state post-
> conviction proceedings had he known at the time of
> those proceedings that the federal courts would not
> review claims adjudicated on the merits in the
> state court proceedings <u>de novo</u>. Because the new
> standards of review do not have a retroactive
> effect, we hold that they apply to our review of
> Drinkard's appeal from the district court's denial
> of his petition for writ of habeas corpus.

***Drinkard***, 1996 WL 571122, *12.  Applying the ***Drinkard*** analysis to the facts of the instant case, we reach the same conclusion.  Moore cannot argue credibly that he would have proceeded any differently during his state post-conviction proceedings had he known at the time of those proceedings that the federal courts would not review his fully adjudicated state court claims <u>de novo</u>. Nor could he argue credibly that he relied to some extent upon the former federal standards of habeas review in making strategic, tactical, or other decisions during the state court litigation.  Accordingly, we hold that the amended standards of review found within § 104(d)apply retroactively to his petition.  Having so found, we turn to the task of applying these new standards to the merits of Moore's appeal.

*INEFFECTIVE ASSISTANCE OF COUNSEL*

On collateral attack, Moore argued before the state trial court that he received ineffective assistance of counsel because his counsel made unreasonable strategic decisions and encouraged Moore to commit perjury.  After conducting an evidentiary hearing on this issue, the state trial court entered detailed findings of fact and conclusions of law holding that Moore had failed to show ineffective assistance of counsel.  The Texas Court of Criminal Appeals accepted the findings of the state trial court and denied Moore's application for writ of habeas corpus.

On October 12, 1993, Moore filed for habeas corpus relief in federal district court.  On October 21, 1993, the district court

11

denied Moore's request for an evidentiary hearing. On September 29, 1995, the district court entered an order holding that Moore had received ineffective assistance of counsel at the punishment phase of his trial. A review of the docket sheet does not indicate any significant activity on this case between the denial of the evidentiary hearing and the entry of this order. In granting habeas corpus relief, the district court applied the pre-AEDPA standards of review for habeas corpus petitions[6] and, after a de novo review of the record, held that the record did not support the state trial court's factual findings. In addition to reversing the factual findings of the state trial court, the district court determined, inter alia, that Moore's counsel had (1) suborned perjury; (2) failed to conduct a reasonable pretrial investigation; (3) failed to effectively cross-examine a police officer; and (4) failed to include mitigating evidence at the punishment phase.

On appeal, the Director argues that the new standards of review set forth in the AEDPA require reversal of the district court's order granting habeas corpus relief. For the following reasons, we agree.

In applying § 104(d), we first must determine whether Moore's claim regarding ineffective assistance of counsel was adjudicated

---

[6] The pre-AEDPA standard of review applied by the district court is set forth in 28 U.S.C. § 2254 and states, in relevant part: "[A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... shall be presumed to be correct ... unless ... the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d).

12

on the merits during the state court proceedings. *Drinkard*, 1996 WL 571122, *14. Our review of the state post-conviction record indicates that there is no question that Moore's ineffective assistance of counsel claim received a full and fair adjudication on the merits by the state trial court. The state trial court conducted an evidentiary hearing, heard testimony and received evidence from both parties, and issued detailed findings of fact and conclusions of law in support of its judgment. Neither party claims that Moore's claim for ineffective assistance of counsel was not adjudicated on the merits by the state court.

Having so found, we next turn to the ultimate question of whether, under the newly amended standards of review set forth in the AEDPA, Moore is entitled to habeas corpus relief because he received ineffective assistance of counsel during the punishment phase of his trial. Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 2064. In deciding whether counsel's performance was deficient, we apply a standard of objective reasonableness, keeping

13

in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 2064-64. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citations omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. *Id*. at 2069. From our review of the state court's findings of fact and conclusions of law after the habeas hearing, we are satisfied that the state court was clearly aware of these principles of federal law.

Because Petitioner's ineffective assistance of counsel claim is a mixed question of law and fact, *Strickland*, 104 S. Ct. at 2070, subsection (1) of § 104(d) governs and dictates that we cannot grant habeas corpus relief unless we determine that the state court's determination involved an unreasonable application of the law to the facts. *Drinkard*, 1996 WL 571122, *14. As we held in *Drinkard*, "an application of law to facts is *unreasonable* only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was

14

incorrect." ***Drinkard***, 1996 WL 571122, *15.  "In other words, we can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists."[7] ***Id***.

After thoroughly reviewing the entire record, we cannot say that reasonable jurists considering the question would be of one view that the state court determination -- holding that Moore had failed to show that he received ineffective assistance of counsel -- was incorrect.  We certainly cannot say that the state court decision was so clearly incorrect as not to be debatable among reasonable jurists.  Accordingly, we conclude, as we must, that 28 U.S.C. § 2254, as amended by § 104(d) of the Antiterrorism and Effective Death Penalty Act, bars habeas corpus relief.  For these reasons, the order of the district court granting Petitioner habeas corpus relief is **REVERSED**.

---

[7]    Our review of state court factual determinations is governed by § 104(d)(2) which states that habeas corpus relief is barred if the state court adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.  AEDPA, § 104(d); ***Drinkard***, 1996 WL 571122, *13.

15