Jay D. SCOTT, Petitioner,

v.

Carl S. ANDERSON, Warden,
Respondent.

No. 1:95–CV–2037.

United States District Court,
N.D. Ohio.

March 7, 1997.

John S. Pyle, Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, Dale Andrew Baich, Office of Federal Public Defender, Phoenix, AZ, Timothy F. Sweeney, Law Offices of Timothy Farrell Sweeney, Cleveland, OH, for Petitioner.

Lillian B. Earl, Office of Asst. Atty. Gen., Cleveland, OH, Stuart A. Cole, Charles L. Wille, Office of Atty. Gen., Columbus, OH, for Respondent.

### *MEMORANDUM & ORDER*

O'MALLEY, District Judge.

### *INTRODUCTION*

On February 2, 1996, petitioner Jay D. Scott ("Scott") filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. Sec. 2254, challenging the constitutional sufficiency of his death sentence, imposed by the Cuyahoga County Court of Common Pleas.[1] Respondent Carl S. Anderson ("Respondent") filed his return of Writ on April 4, 1996.

---

1. Scott was convicted of aggravated murder and sentenced to death. He appealed his conviction and sentence to the state courts, and both were upheld and later affirmed. *State v. Scott,* No. 48609, 1985 WL 9047 (Ohio App. May 23, 1985), *aff'd.* 26 Ohio St.3d 92, 497 N.E.2d 55 (1986), *cert. den. sub nom. Scott v. Ohio,* 480 U.S. 923, 107 S.Ct. 1386, 94 L.Ed.2d 699 (1987).

About three months after Scott filed his petition, on April 24, 1996, President Clinton signed into law Title I of the "Antiterrorism and Effective Death Penalty Act of 1996," Pub.L. 104–132, 110 Stat. 1214 (the "Act"), which, among other things, substantially alters the way in which Federal Courts are to resolve prisoner requests for habeas corpus relief Sections 101, 102, 103, 104, and 106 of Title I amend existing statutory provisions 28 U.S.C. Secs. 2244, 2253, 2254 and Fed.R.App. Proc. 22 ("the Amendments"). Section 104 of the Amendments amends 28 U.S.C. Sec. 2254, increasing the deference to be given to prior state court determinations, both of law and fact, and redefining the burdens applicable in evidentiary hearings held in connection with habeas corpus petitions filed by prisoners in state custody. In addition to amending existing habeas corpus provisions, Section 107 of the Act adds Chapter 154, which establishes special, expedited habeas corpus procedures for capital cases originating in states that conform to Chapter 154's requirements, i.e. "opt-in" states.

Scott asserts that Chapter 154 does not apply to this proceeding because Chapter 154 applies only to "opt in" states, which, Scott argues, Ohio is not. In addition, Scott argues that Congress did not intend Section 104 of the Amendments to apply to cases pending on the date of the Act's enactment, and, consequently, that Section 104 is not applicable to this proceeding. For the reasons discussed below, this Court agrees with the first of Scott's arguments and disagrees with the second. Section 107 (Chapter 154) of the Act is not applicable to this proceeding; Section 104 of the Act is.

### LAW AND ANALYSIS

#### A. Chapter 154

As part of the Act, Section 107 creates a new chapter 154 under Title 28 of the United States Code. This new provision provides states with a system that ensures expedited and final review of federal habeas corpus petitions. Chapter 154 offers such a system only to those states that qualify under one of two "opt-in" procedures, however: 1) the procedure codified in 28 U.S.C. Sec. 2261 or 2) the procedure codified in 28 U.S.C.

Sec. 2265. Respondent contends that Ohio qualifies as an "opt in" state under 28 U.S.C. Sec. 2261. This Court disagrees.

The expedited procedures created by Chapter 154 are available only to those states that comply with 28 U.S.C. Sec. 2261 (or 28 U.S.C. Sec. 2265), which provides, in pertinent part:

(a) This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence. It shall apply only if the provisions of subsections (b) and (c) are satisfied.

(b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

(c) Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in subsection (b) must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—

(1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or

(3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

The Public Defender Act, Ohio Revised Code Chapter 120, codifies the right to counsel for indigent defendants. O.R.C. Sec.

120.16(A)(1) provides, in pertinent part, that "the county public defender *shall* provide legal representation to indigent adults and juveniles ... in post-conviction proceedings as defined in this section." Ohio Rev.Code Ann. Sec. 120.16(A)(1) (Banks–Baldwin 1984) (emphasis added). Thus, it appears, *prima facie,* that this statute conforms to one of the requirements of 28 U.S.C. 2261—that a state that "opts-in" must provide counsel, by statute, to "all State prisoners under capital sentence." 28 U.S.C Sec. 2261(c) (1996). O.R.C. Sec. 120.16(D) provides, however, that "the county public defender shall not be required to prosecute any appeal, post-conviction remedy, or other proceeding, unless he is first satisfied there is arguable merit to the proceeding." Ohio Rev.Code Ann. Sec. 120.16(D) (Banks–Baldwin 1984). Thus, a condition precedent to indigent defendants being provided counsel is a determination by the public defender that the proceeding have "arguable merit". As the Ohio Supreme Count recognized in *State v. Crowder,* 60 Ohio St.3d 151, 152–153, 573 N.E.2d 652, 654 (1991):

> [t]he General Assembly has provided the public defender with the authority and discretion to refuse to represent an indigent petitioner seeking post-conviction relief, if the public defender, after examining the issues raised by the petitioner, concludes that the issues do not have arguable merit.
>
> [W]e believe that although an indigent petitioner does not have a state or a federal constitutional right to representation by an attorney in a post-conviction proceeding, the petitioner, pursuant to R.C. 120.16(A)(1) and (D), is entitled to representation by a public defender at such a proceeding if the public defender concludes that the issues raised have arguable merit.

Thus, given the discretion provided to public defenders by O.R.C. Sec. 120, an indigent defendant who requests state appointed counsel is not certain to receive such assistance at the post-conviction stage.

Respondent argues vehemently that "[t]he statutory right to post-conviction counsel *always* applies in capital cases because the public defender has *always* considered such petitions to have merit. Indeed, the public defender *always* argues that capital cases are meritorious by virtue of their subject matter alone." (Respondent's Response at 7–8). Despite what might actually occur, the fact is that the right of the public defender to deny counsel to an indigent defendant in a post-conviction proceeding is statutorily authorized. This statutory authority, because it is within the discretion of the public defender, violates the requirements set forth in Sec. 2261(c), which orders "opt-in" states to provide counsel to "*all* State prisoners under capital sentence." 28 U.S.C. Sec. 2261(c) (1996) (emphasis added). *See Hamblin v. Anderson,* 947 F.Supp. 1179, 1182 (N.D.Ohio 1996) (holding that "this statutorily-granted power" in the hands of the public defender ... prevents Ohio from "opting-in" to the expedited procedures of Title 1"). *Accord, Zuern v.Tate,* 938 F.Supp. 468 (S.D.Ohio 1996). Thus, because Ohio's Public Defender Act fails to satisfy the specific requirements of 28 U.S.C. Sec. 2261(b) and (c), this Court must conclude that Chapter 154 is not applicable to this proceeding.

The Court emphasizes that it is the explicit and detailed language chosen by Congress in Chapter 154 that mandates this result. Ohio can boast one of the most careful and comprehensive systems in the country for the provision of legal services to indigent defendants in capital cases. Not only is Ohio's Public Defender authorized to provide representation to capital defendants in post-conviction proceedings, a responsibility the Public Defender takes quite seriously, but Ohio, unlike many other states, has established stringent standards for training and certifying competent counsel to handle capital cases at the trial and appellate levels. Undoubtedly, Congress had in mind systems like that available in Ohio when it envisioned the concept of "opt-in" states. Whether intentionally or not, however, the very precise language Congress chose to use in Chapter 154 excludes Ohio from its reach.

## B. *The Amendments*

■ Although several sections of the Act contain specific dates indicating precisely when they are to become effective (e.g., Section 107(c) of the Act states "Chapter 154 of

Title 28, United States Code . . . shall apply to cases pending on or after the date of enactment of this Act."), neither the Act as a whole nor the various Amendments contain effective date provisions. Scott's motion seeks clarification regarding the effective date of Section 104 and its applicability to this proceeding.

Where no effective date appears on the face of a statute, the Court must determine whether a new statute applies retroactively, rather than prospectively. In this, the Court is guided by the principles delineated by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229, 261–62 (1994). In *Landgraf*, the Supreme Court explained the trial court's inquiry as follows. First, the court must "determine whether Congress has expressly prescribed the statute's proper reach." If Congress has done so, the inquiry ends there. When the statute or particular provision lacks an express statement regarding retroactivity, the court must determine whether application of the provisions would have a true "retroactive effect", that is, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statutory provision would have such an effect, Congress' failure to specify that it is to be applied retroactively, prohibits such application. *Id. See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 840, 110 S.Ct. 1570, 1578–79, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring).

Scott argues that Congress has "expressly prescribed the statute's proper reach" within the meaning of *Landgraf* and that no further retroactivity analysis is necessary. Scott contends that, by expressly providing for the retroactive application of Chapter 154 through Section 107(c) of the Act, Congress expressed its intention that the other provisions of the Act, including the Amendments, be applied prospectively. Thus, Scott ar-

gues, where Congress meant for portions of the Act to be applied retroactively, Congress knew how to and did so state. Several courts, including one in this district, have agreed with Scott's analysis. *See, e.g., Boria v. Keane*, 90 F.3d 36, 38 (2d Cir.1996) (calling Congress' "silence" on retroactivity issue in the Amendments "striking" in the face of other effective date provisions, including Section 107(c), in the Act and concluding that "[t]his silence, coupled with the presumption against retroactivity, leads us to hold that the new statute does not apply to this case."); *Hamblin*, 947 F.Supp. at 1182–83 ("[t]his court is convinced that the intent of Congress is clear with respect to the application of the Amendments to cases pending on the date of the statutes' enactment. By including effective date provisions in selected provisions of the Act, Congress obviously intended prospective application of those statutes without such provisions.") *See also, Edens v. Hannigan*, 87 F.3d 1109, 1111–1112, n. 1 (10th Cir.1996); *Brewster v. Kirby*, 954 F.Supp. 1155, 1158–59 (N.D.W.Va. 1997); *Grady v. Artuz*, 931 F.Supp. 1048, 1054 n. 1 (S.D.N.Y. 1996); *United States v. Trevino*, 1996 WL 252570 (N.D.Ill.1996); *Warner v. United States*, 926 F.Supp. 1387, 1390 (E.D.Ark. 1996).[2]

Two Circuits disagree with Scott and the authority upon which he relies regarding the effective date of Section 104. Both *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) *en banc, cert. granted* —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (Jan. 10, 1997) and *Moore v. Johnson*, 101 F.3d 1069 (5th Cir.1996) (citing *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996)) directly address whether the provisions of Section 104 are to govern a federal court's consideration of habeas petitions pending when the Act was signed into law. Both conclude that they do.

Both *Lindh* and *Moore* begin by rejecting the argument that Congress' silence in the Amendments is meaningful in the face of express effective date provisions appearing elsewhere in the Act. *Lindh*, 96 F.3d at 861–62; *Moore*, 101 F.3d at 1073 n. 4. Both

**2.** The Ninth Circuit has decided, in an *en banc* order, that the Amendments are not applicable to cases pending on April 24, 1996, but it has not yet explained the rationale for this decision. *Jeffries v. Wood*, 103 F.3d 827 (9th Cir.1996), *en banc*.

conclude that the critical question is whether Section 104 *itself* contains an effective date provision, not whether Congress chose to express itself with respect to some *other* provision of the Act. Because Section 104 does not, the *Lindh* and *Moore* courts proceeded to the second prong of the inquiry dictated by *Landgraf*—i.e., whether Section 104 impairs or affects the substantive rights of a petitioner whose request for habeas corpus relief was pending at the time they were passed.[3]

This Court agrees with the decisions in *Lindh* and *Moore*, and respectfully disagrees with the decisions upon which Scott relies. *Landgraf* itself teaches that negative implications from Congressional silence, even those fairly inferable, are not sufficient to satisfy the requirement that a statute's proper reach be "expressly prescribed". *Landgraf*, 511 U.S. at 262, 114 S.Ct. at 1495, 128 L.Ed.2d at 250 ("petitioner's statutory argument would require us to assume that Congress chose a surprisingly indirect route to convey an important and easily expressed message concerning the Act's effect on pending cases"). *See also Landgraf*, 511 U.S. at 288, 114 S.Ct. at 1523, 128 L.Ed.2d at 267 (Scalia, J., concurring) ("refinement and subtlety are no substitute for clear statement"). Indeed, the Sixth Circuit has expressly rejected the "negative inference" argument Scott advances here in deciding whether another provision of the Act is to be applied retroactively. *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1067, (6th Cir. 1997) (finding that Section 107(c)'s express retroactivity provision carries no negative implication regarding retroactivity of Section 102 of the Act addressing certificates of appealability). *See also Hunter v. United States*, 101 F.3d 1565, 1569 (11th Cir.1996) (rejecting argument that language in 107(c) dictates conclusion that Congress intended Sections 102 and 103 to be applied prospectively). Because no clear statement of Congressional intent regarding the issue of retroactivity can be found in Section 104, the remainder of the *Landgraf* analysis cannot be avoided.

Resort to that analysis leads this Court, as it did the *Lindh* and *Moore* courts, to the conclusion that Section 104 does not have a "retroactive effect" within the meaning of *Landgraf*, it is, thus, applicable to all court decisions rendered after its enactment, regardless of when the petition was filed. Section 104 generally increases the deference federal courts are to give to state court decisions when reviewing federal habeas corpus petitions. It defines the standard of review to be applied to legal and factual findings by the state courts, defines the circumstances under which federal courts are to entertain requests for evidentiary hearings and the burdens applicable to those proceedings, and reiterates the exhaustion requirement applicable in federal habeas corpus proceedings. Section 104 does not regulate Scott's conduct as it relates to the crimes charged and does not prevent him from receiving federal review of the constitutionality of the sentence imposed on him by virtue of that conduct. In short, it speaks to the power of the court to undertake review of state court determinations and dictates when certain procedures are available to aid that review. As *Landgraf* itself held, statutory provisions affecting those types of changes do not have a "retroactive affect" on substantive rights. *Landgraf*, 511 U.S. at 268, 114 S.Ct. at 1501, 128 L.Ed.2d at 258. *See Lindh*, 96 F.3d at 863–867 (Section 104 does not regulate "primary conduct", would have had no effect on Lindh's decision to commit his crime or to litigate in the face of it and, thus, does not impact Lindh's substantive rights); *Moore*, 101 F.3d at 1073–4 (Section 104 is "easily characterized as procedural in nature" and its application does not deprive petitioner of a substantive right); *Archie v. Hobbs*, 954 F.Supp. 1149, 1152–53 (W.D.Va. 1997)(*quoting Lindh* 96 F.3d at 867)(§ 2254(d), as amended, merely affects the relation between federal and state courts). Cf *Lyons*, 105 F.3d at 1076; *Hunter*, 101 F.3d at 1572–73.

### CONCLUSION

For the reasons stated, Scott's "Motion for Ruling that Provisions of Title I of the Antiterrorism and Effective Death Penalty Act of 1996 Do Not Apply in this Case" is **GRANTED IN PART AND DENIED IN PART**.

---

**3.** The courts upon which Scott relied never reached this question.

Chapter 154 of Title I (Section 107) is not applicable to this matter because Ohio is not an "opt-in" state under the express terms of that Chapter. Section 104 of the Act, amending 28 U.S.C. Sec. 2254, is applicable to the Court's resolution of the issues raised in the petition in this matter.[4]

**IT IS SO ORDERED.**

---

**4.** The Court does not have before it and, thus, does not decide whether any other provision of the Act is applicable to this matter.