Juan Manuel **CAMPOS**, Petitioner,

v.

Gary **JOHNSON**, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.

Civ. No. SA–96–CA–245.

United States District Court, W.D. Texas.

March 21, 1997.

---

**MEMORANDUM OPINION AND ORDER**

H.F. GARCIA, District Judge.

Petitioner Juan Manuel Campos filed this federal habeas corpus proceeding pursuant to Title 28 U.S.C. Section 2255 challenging not his June, 1990 Bexar County conviction for aggravated assault causing serious bodily injury, not the revocation of his release on mandatory supervision, but, rather, the manner in which state officials have calculated petitioner's credit for time served against his sentence. More specifically, petitioner argues that (1) state parole officials have erroneously treated his offense as an aggravated offense and refused to release petitioner on mandatory supervision, (2) petitioner has wrongfully been denied good time credits, (3) the refusal of state officials to credit petitioner for street time served prior to the revocation of his parole violates Double Jeopardy principles, and (4) petitioner's plea agreement included a specific provision that the offense to which petitioner entered his plea of nolo contendere would be a non-aggravated offense. For the reasons set forth below, petitioner's request for federal habeas corpus relief will be denied.

## I. Statement of the Case

### A. Factual Background

Petitioner Juan Manuel Campos was indicted originally on June 21, 1989 in cause no. 89–CR–2961 on a charge of aggravated assault, to wit, causing serious bodily injury by stabbing the complainant with a deadly weapon, i.e., a knife.[1] On April 2, 1990, the trial court granted the prosecution's motion to amend the indictment to charge petitioner only with aggravated assault causing serious bodily injury, i.e., to delete the deadly weapon accusation.[2] Petitioner entered a plea of nolo contendere to the amended indictment on June 11, 1990 and was sentenced to serve an eight-year term of imprisonment.[3] Petitioner filed no appeal from his conviction or sentence. Petitioner was released on parole on or about November 4, 1991 but that parole was revoked on or about April 7, 1994.[4]

---

1. The original indictment in cause no. 89–CR–2961 appears among the state court papers submitted to this Court August 21, 1996 by the respondent relating to petitioner's *second* state habeas corpus proceeding, at page 17.

2. The prosecution's motion to amend the indictment and the state trial court's Order granting same appear among the state court papers submitted to this Court August 21, 1996 by the respondent relating to petitioner's *second* state habeas corpus proceeding, i.e., state habeas corpus application 21,920–02 [henceforth "Second State Habeas Records"], at pp. 18–19.

3. *See* Judgment–Plea of Guilty or Nolo Contendere, First State Habeas Corpus Records, at p. 12; and Judgment–Plea of Guilty or Nolo Contendere, Second State Habeas Corpus Records, at p. 20. While the state trial court's Orders of October 22, 1990 and April 17, 1996 in connection with petitioner's first and second state habeas corpus proceedings, respectively, both erroneously state the date petitioner entered his nolo contendere plea, that date is firmly and unequivocally established by the Judgment in his criminal proceeding, i.e., on June 11, 1990.

4. *Id.*, at p. 24.

On September 11, 1990, petitioner filed his first state habeas corpus application, in which he argued that (1) there was insufficient evidence introduced in support of nolo contendere plea to support the aggravated aspect of his offense,[5] (2) petitioner's nolo contendere plea was involuntary because petitioner had been led to believe that he would receive a probated sentence in exchange for his entry of such a plea, and (3) his trial counsel rendered ineffective assistance in connection with petitioner's plea by failing to advise petitioner that a person convicted of aggravated assault was ineligible for a probated sentence.[6] In an Order issued October 22, 1990, the state trial court (1) found that the petitioner had pleaded guilty to an assault which caused serious bodily injuries, i.e., to a charge of aggravated assault, (2) found that, contrary to the petitioner's allegations, the trial judge had not included an affirmative finding regarding petitioner's use of a deadly weapon in the Judgment imposing sentence, (3) concluded that there was ample evidence to support the petitioner's conviction and the determination that the petitioner's assault had caused serious bodily injuries, (4) concluded that, under applicable Texas law the petitioner had been eligible to receive a probated sentence, but (5) found that the trial judge had simply exercised his discretion and denied the request for probation made by petitioner's trial counsel.[7] On February 27, 1991, the Texas Court of Criminal Appeals denied petitioner's first state habeas corpus application without written order based on the findings of the state trial court without a hearing.[8]

On March 19, 1996, petitioner filed his *second* state habeas corpus application, in which he argued that (1) state officials had arbitrarily refused to reinstate or restore petitioner's previously earned good times credits which had been forfeited upon the revocation of petitioner's parole, (2) this refusal to restore the petitioner's forfeited good time credits violated Equal Protection principles, (3) state law made restoration of petitioner's good time credits mandatory, and (4) petitioner was being wrongfully denied release on mandatory supervision.[9] In an Order issued April 17, 1996, the state trial court (1) concluded that the petitioner was entitled to bring a successive state habeas corpus application because his second application presented new claims that could not have been presented in his previous application, (2) found that the petitioner had pleaded nolo contendere to a charge of aggravated assault causing serious bodily injury, (3) concluded that because of the aggravated nature of the petitioner's offense, under applicable Texas law, the petitioner was ineligible for release on mandatory supervision, (4) petitioner had been released on parole on November 4, 1991 but his parole was revoked on April 7, 1994, (5) concluded that petitioner was not entitled to credit against his sentence for time he spent on parole prior to revocation of same, and (6) recommended denial of petitioner's second state habeas corpus application.[10] On May 22, 1996, the Texas Court of Criminal Appeals denied petitioner's second state habeas corpus application without written order based on the findings of the trial court made without a hearing.[11]

### B. *Procedural History*

On March 12, 1996, petitioner submitted his federal habeas corpus petition in this

---

5. At all times relevant to petitioner's offense and conviction, Texas law defined the offense of *aggravated* assault as including any intentional or knowing assault that resulted in serious bodily injury. *See* Section 22.02(a)(1), Texas Penal Code Annotated (Vernon 1989).

6. A copy of petitioner's first state habeas corpus application appears among the state court records relating to petitioner's first state habeas corpus proceeding submitted to this Court by the respondent on both April 18, 1996 and August 21, 1996 [henceforth "First State Habeas Corpus Records"], at pp. 1–3.

7. *See* Order of October 22, 1990, First State Habeas Corpus Records, at pp. 9–11.

8. *See Ex parte Campos*, App. No. 21,920–01 (Tex. Crim.App. February 27, 1991).

9. *See* Second State Habeas Corpus Records, at pp. 1–14.

10. *See* Second State Habeas Corpus Records, at pp. 23–25.

11. *See Ex parte Campos*, App. No. 21,920–02 (Tex.Crim.App. May 22, 1996).

cause to the Tyler Division of the United States District Court for the Eastern District of Texas. That court subsequently transferred this cause to this Court, where it was docketed on March 18, 1996.[12] In his original federal habeas corpus petition, petitioner argues that (1) state officials have erroneously construed his offense as an aggravated offense and refused to release petitioner on mandatory supervision,[13] (2) he has been denied good time credits, (3) his continued incarceration violates Double Jeopardy principles because his flat time, plus his accrued good time credits, plus his time spent on parole more than exceeds the duration of his sentence, and (4) his nolo contendere plea was involuntary because the plea bargain that induced his plea included a provision that the offense to which petitioner entered his plea would be non-aggravated and would not involve an affirmative finding that the petitioner had used a deadly weapon during the course of his offense.[14]

On April 17, 1996, respondent filed a motion to dismiss petitioner's federal habeas corpus petition for failure to exhaust state remedies correctly pointing out, as of that date, the petitioner had failed to obtain a ruling from the Texas Court of Criminal Appeals on any of petitioner's complaints raised in his federal habeas corpus petition.[15] On May 16, 1996, while his *second* state habeas corpus proceeding was still pending in the state courts, petitioner filed a pleading in which misrepresented that he had, in fact, obtained a ruling on the claims he had set forth in his second state habeas corpus appli-

cation.[16] In an Order issued June 18, 1996, the Magistrate Judge directed the respondent submit all state court records relevant to petitioner's *second* state habeas corpus application to this Court and invited the respondent to withdraw his motion to dismiss petitioner's federal habeas corpus petition.[17] In an advisory filed June 26, 1996, the respondent informed the Magistrate Judge that the petitioner had filed his second state habeas corpus application *after* he filed his federal habeas corpus petition and that petitioner had misrepresented the status of his second state habeas corpus proceeding as of May 16, 1996.[18]

On August 21, 1996, respondent filed a renewed motion to dismiss petitioner's federal habeas corpus petition, once again correctly pointing out that the petitioner had not exhausted available state remedies on his broken plea bargain claim, but also arguing, alternatively, that petitioner's unexhausted claims were procedurally barred and that petitioner's remaining claims did not warrant federal habeas relief.[19] Petitioner never filed any response to respondent's supplemental motion to dismiss or for summary judgment.

## II. *Analysis and Authorities*

### A. *Antiterrorism and Effective Death Penalty Act of 1996*

 On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[20] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant

---

**12.** *See* docket entry no. 3.

**13.** For a discussion of the nature of mandatory supervision under Texas law and the distinction between mandatory supervision and parole under Texas law, *see Madison v. Parker,* 104 F.3d 765, 768–69 (5th Cir.1997).

**14.** Under Texas law, the only effect of a deadly weapon finding is to increase that portion of a prisoner's sentence which must be served before he becomes eligible for release on parole. *See Ables v. Scott,* 73 F.3d 591, 593 n. 3 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 116 S.Ct. 1696, 134 L.Ed.2d 795 (1996), *citing* Article 42.18, Section 8(b)(3), Texas Code of Criminal Procedure. In point of fact, the Judgment in petitioner's case did *not* include an affirmative finding that petitioner had used a deadly weapon in the

course of his offense. However, contrary to the suggestions in petitioner's pleadings herein, that fact alone did *not* render petitioner's offense a non-aggravated one for purposes of Texas statutes dealing with release on mandatory supervision.

**15.** *See* docket entry no. 4.

**16.** *See* docket entry no. 7.

**17.** *See* docket entry no. 8.

**18.** *See* docket entry no. 9.

**19.** *See* docket entry no. 12.

**20.** Pub.L. No. 104–132, 110 Stat. 1214 (1996).

to *Title 2* 8 U.S.C. Section 2254.[21] The Fifth Circuit has held that the new standard of review provisions of the AEDPA govern federal court review of all federal habeas corpus petitions filed by state prisoners, including those petitions pending as of the effective date of that enactment.[22] Under the AEDPA's new standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[23]

In petitioner's two state habeas corpus proceedings, the state courts expressly and specifically determined that petitioner was not entitled to state habeas corpus relief based on his complaints that either (1) there was insufficient evidence to support petitioner's nolo contendere plea to a charge of aggravated assault causing serious bodily injury, (2) petitioner's plea was involuntary because petitioner had been led to believe that he would receive a probated sentence when, in fact, petitioner was ineligible to receive a probated sentence, (3) petitioner's trial counsel rendered ineffective assistance by failing to explain to petitioner that petitioner was ineligible to receive a probated

sentence, (4) state officials erroneously denied him release on mandatory supervision, (5) state officials erroneously denied him credit against his sentence for time spent on parole prior to revocation of same, and (6) state officials had arbitrarily refused to restore his forfeited good time credits. The AEDPA places great value upon the factual findings and conclusions of law made by state courts in the course of petitioner's state habeas corpus proceedings. Because the state habeas court denied petitioner's many state habeas claims on the merits, this Court is virtually bound by the state court holdings on those issues unless the petitioner can satisfy the standard outlined above of showing that the state court holdings were based upon either an unreasonable application of clearly established federal law or an unreasonable determination of the facts from the evidence before that court. With these principles in mind, this Court must turn to the claims presented in petitioner's federal habeas corpus petition.

### B. *Failure to Exhaust State Remedies*

■ A fundamental prerequisite to federal habeas corpus relief under Title 28 U.S.C. Section 2254 is the exhaustion of all claims in state court under Section 2254 prior to requesting federal collateral relief.[24] A state prisoner must exhaust all available state court remedies before he can obtain federal habeas corpus relief, unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights.[25] In order to exhaust, a petitioner

---

**21.** *See Brown v. Cain,* 104 F.3d 744, 748–49 (5th Cir.1997); *Childress v. Johnson,* 103 F.3d 1221, 1224 (5th Cir.1997); *Moore v. Johnson,* 101 F.3d 1069, 1072–74 (5th Cir.1996); *Mata v. Johnson,* 99 F.3d 1261, 1265–66 (5th Cir.1996), *vacated in part and modified on other grounds,* 105 F.3d 209 (5th Cir.1997); *Herman v. Johnson,* 98 F.3d 171, 173 (5th Cir.1996), *cert. pending; Drinkard v. Johnson,* 97 F.3d 751, 756 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997).

**22.** *See Brown v. Cain,* 104 F.3d at 748–49; *Lockhart v. Johnson,* 104 F.3d 54, 56–57 (5th Cir. 1997); *Childress v. Johnson,* 103 F.3d at 1224; *Moore v. Johnson,* 101 F.3d at 1072–73; *Mata v. Johnson,* 99 F.3d at 1266; and *Drinkard v. Johnson,* 97 F.3d at 767.

**23.** *See Brown v. Cain,* 104 F.3d at 748–49; *Lockhart v. Johnson,* 104 F.3d at 56–57; *Childress v. Johnson,* 103 F.3d at 1224; *Moore v. Johnson,* 101 F.3d at 1072; *Mata v. Johnson,* 99 F.3d at 1267; and *Drinkard v. Johnson,* 97 F.3d at 767.

**24.** *Sterling v. Scott,* 57 F.3d 451, 453 (5th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996).

**25.** See *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Deters v. Collins,* 985 F.2d 789, 795 (5th Cir. 1993); *Yohey v. Collins,* 985 F.2d 222, 226 (5th Cir.1993); *Thomas v. Collins,* 919 F.2d 333, 334 (5th Cir.1990), *cert. denied,* 501 U.S. 1235, 111 S.Ct. 2862, 115 L.Ed.2d 1029 (1991); *Satterwhite v. Lynaugh,* 886 F.2d 90, 92 (5th Cir.1989); and *Richardson v. Procunier,* 762 F.2d 429, 430 (5th Cir.1985).

must "fairly present" all of his claims to the state court.[26] The presentation of claims for the first time on discretionary review to the state's highest court does *not* constitute "fair presentation" for exhaustion purposes.[27] Full exhaustion of *all* claims presented is required before federal habeas corpus relief is available.[28]

A Texas inmate seeking federal habeas relief who, in directly appealing his state criminal conviction, has by-passed the Texas Court of Criminal Appeals will not be deemed to have exhausted his state remedies until he has raised his claims before the state's highest court through collateral review provided by state habeas procedures.[29] Where a federal habeas corpus petitioner urges an issue that he failed to raise on direct appeal, he must first use available state collateral procedures to satisfy the exhaustion requirement.[30] However, if a Texas prisoner has obtained a ruling on the merits on a claim from an intermediate Texas appellate court and his petition for discretionary review has been denied by the Texas Court of Criminal Appeals, he need not file a subsequent state petition for habeas corpus relief urging the same claim in order to have exhausted state relief.[31]

In Texas, a state prisoner has available habeas corpus relief through Article 11.07 of the Texas Code of Criminal Procedure as a means of collaterally attacking his conviction or any improprieties with regard to his parole revocation.[32] The Texas courts routinely review complaints about defects in parole-revocation proceedings presented through applications for state habeas corpus relief.[33]

Presenting new legal or factual theories that have not been presented to the state courts in a federal habeas petition warrants dismissal of the petition.[34] Likewise, federal

---

**26.** *Id.;* and *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995).

**27.** *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Satterwhite v. Lynaugh,* 886 F.2d at 92.

**28.** *See Rose v. Lundy,* 455 U.S. 509, 518–22, 102 S.Ct. 1198, 1203–05, 71 L.Ed.2d 379 (1982); and *Thomas v. Collins,* 919 F.2d at 334.

**29.** *Richardson v. Procunier,* 762 F.2d at 432; *see also Carter v. Estelle,* 677 F.2d 427, 442 n. 10 (5th Cir.1982), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). For purposes of satisfying the exhaustion requirement, the Texas Court of Criminal Appeals is the highest Texas court with jurisdiction to entertain most claims that are asserted in federal habeas corpus petitions filed by Texas prisoners. *See Richardson v. Procunier,* 762 F.2d at 431–32.

**30.** *Lowe v. Scott,* 48 F.3d 873, 875 (5th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2278, 132 L.Ed.2d 282 (1995).

**31.** See *Myers v. Collins,* 919 F.2d 1074, 1076–77 (5th Cir.1990). *See also Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir.1995), (holding that Section 2254 does *not* require repetitious applications to state courts)

**32.** *See Ex parte Hall,* 696 S.W.2d 915, 917 (Tex. Crim.App.1985); and *Ex parte Henderson,* 645 S.W.2d 469, 472 (Tex.Crim.App.1983) (*en banc* ).

**33.** *See, e.g., Ex parte Nelson,* 815 S.W.2d 737 (Tex.Crim.App.1991), (reviewing claim regarding alleged defects in parole-revocation proceeding); and *Ex parte Canada,* 754 S.W.2d 660 (Tex.Crim.

App.1988), (reviewing claim of credit for time served pending parole-revocation hearing).

**34.** *See Sones v. Hargett,* 61 F.3d at 414–15, (holding that the exhaustion requirement is *not* satisfied if a petitioner presents *new* legal theories or entirely *new* factual claims in his petition in the federal court); *Thomas v. Collins,* 919 F.2d at 334–35, (holding that presenting new legal theories based upon facts presented in state proceedings does not satisfy the exhaustion requirement); *Knox v. Butler,* 884 F.2d 849, 852 n. 7 (5th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990): "on habeas review, federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as all factual allegations those grounds. Thus rule extends to the evidence establishing the factual allegations themselves."; *Dispensa v. Lynaugh,* 847 F.2d 211, 217 (5th Cir.1988), (holding that a claim is not exhausted where a federal habeas petitioner presents the same legal claim to a federal court that he presented in state court but supports that claim with new factual allegations that he did not make in the state courts); *Joyner v. King,* 786 F.2d 1317, 1320 (5th Cir. 1986), *cert. denied sub nom. Joyner v. Phelps,* 479 U.S. 1010, 107 S.Ct. 653, 93 L.Ed.2d 708 (1986); *Rodriguez v. McKaskle,* 724 F.2d 463, 466 (5th Cir.1984), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984), (holding that the exhaustion requirement is not normally satisfied if a petitioner presents new legal theories or entirely new factual claims); *Vela v. Estelle,* 708 F.2d 954, 958 (5th Cir.1983), *cert. denied,* 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984); and *Burns v. Estelle,* 695 F.2d 847, 849–50 (5th

constitutional claims must have been presented to, and considered by, the state courts in a federal constitutional context; it is insufficient that all the facts underlying a federal claim were before the state court or that a somewhat similar state-law claim was made.[35] Finally, a habeas petitioner who presents material additional evidentiary support to the federal court that was not presented to the state courts has not exhausted state remedies with regard to that evidence.[36]

The Supreme Court and Fifth Circuit have directed the district courts to dismiss "mixed" petitions. i.e., those containing exhausted and un-exhausted claims, for failure to exhaust available state remedies with regard to all of the claims for federal habeas relief.[37] Therefore, ordinarily, this Court is required to dismiss federal habeas petitions that include unexhausted claims.[38] However, it is incumbent on a federal district court to independently examine the relevant pleading and state court records to determine whether the interests of comity and federalism will be better served by addressing the merits forthwith or by requiring a series of additional. state court proceedings before reviewing the merits of the petitioner's claim.[39] The reason for this treatment of the exhaustion requirement is that its genesis lies in the principles of comity and federalism that underlie our national judicial system.[40] The foregoing principles guide this Courts review of federal habeas petitions filed by state prisoners regardless of whether they are expressly asserted by the parties in a specific legal proceeding.

As explained above, petitioner's state habeas corpus applications included a host of claims, including his claim that he had been wrongfully denied release on mandatory supervision, but *none* that included any claims that either (1) petitioner's plea bargain agreement had included a provision that the petitioner would enter a plea to a non-aggravated offense and that his subsequent plea to the offense of assault causing serious bodily injury breached that agreement, (2) petitioner had been wrongfully denied good time credits, or (3) petitioner's constitutional right to freedom from Double Jeopardy had been violated. Nothing in either of the petitioner's two state habeas corpus applications in any way, shape, or form notified the state habeas court that petitioner was complaining about any of those three latter claims. Likewise, for obvious reasons, there was nothing in petitioner's state habeas application complaining about a denial of state habeas corpus relief. Thus, petitioner has wholly failed to "fairly present" and to exhaust available state remedies on his second, third, and fourth claims for federal habeas relief listed above, i.e., denial of good time credits, Double Jeopardy, and broken plea bargain claims. However, as explained above, a federal habeas petitioner's failure to exhaust is *not* a jurisdictional defect. The Supreme Court's directive in *Granberry v. Greer* requires that this Court ascertain whether the principles of comity and federalism which underlie the exhaustion doctrine will be offended by this Court proceeding to address the merits of petitioner's unexhausted federal claim. This Court has undertaken a careful

Cir.1983), (holding that where a petitioner asserted a claim of ineffective assistance based upon certain facts in a state proceeding, a new claim of ineffective assistance based upon an entirely new set of facts had not been "exhausted").

**35.** *See Duncan v. Henry*, 513 U.S. at 365–66, 115 S.Ct. at 888; *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir.1993); and *Minor v. Lucas*, 697 F.2d 697, 698 (5th Cir.1983).

**36.** *See Graham v. Johnson*, 94 F.3d 958, 968–69 (5th Cir.1996); and *Knox v. Butler*, 884 F.2d at 852 n. 7: "on habeas review, federal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as all factual allegations those grounds. This rule extends to the

evidence establishing the factual allegations themselves."

**37.** *See Rose v. Lundy*, 455 U.S. at 518–22, 102 S.Ct. at 1203–05; *Sones v. Hargett*, 61 F.3d at 415; *Sterling v. Scott*, 57 F.3d at 453; and *Burns v. Estelle*, 695 F.2d at 850–52.

**38.** *See Rose v. Lundy*, 455 U.S. at 518–22, 102 S.Ct. at 1203–05; *Sterling v. Scott*, 57 F.3d at 453; and *Burns v. Estelle*, 695 F.2d at 850–52.

**39.** *See Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987); and *Graham v. Johnson*, 94 F.3d 958, 970 (5th Cir. 1996).

**40.** *Id.*

review of all of the petitioner's *federal* claims and finds that none of those claims furnish even an arguable basis for federal habeas corpus relief in this cause.

■ If a federal habeas petitioner does not raise even arguable federal claims, both the state and federal courts will be well served by the federal district court addressing the merits of unexhausted claims.[41] For the reasons set forth below, petitioner's unexhausted claims fail to present even an arguable basis for federal habeas corpus relief. In fact, one of petitioner's unexhausted claims is procedurally barred and the others are premised on erroneous constructions of state statutes. The respondent has moved for dismissal of petitioner's federal habeas corpus petition for want of exhaustion. However, given the length of time this cause has been pending in this Court and the complete lack of merit to any of petitioner's federal claims herein, the principles of comity and federalism which underlie the exhaustion doctrine will not be offended by this Court addressing all of petitioner's claims herein. Therefore, this Court will not dismiss petitioner's federal habeas corpus petition at this juncture for lack of exhaustion.

C. *State Law Issues in Federal Habeas Corpus Proceedings*

■ A state prisoner seeking federal court review of his conviction pursuant to Title 28 U.S.C. Section 2254 must assert a violation of a federal constitutional right.[42] Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented.[43] In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[44] The question before a federal habeas corpus court is not whether the state court correctly applied its own interpretation of state law; rather, the question is whether the petitioner's federal constitutional rights were violated.[45]

> When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.[46]

Thus, the issue before this Court is *not* whether the Texas courts properly applied state-law principles during petitioner's trial or when they affirmed petitioner's conviction and sentence or denied petitioner's state habeas corpus application, but whether petitioner's federal constitutional rights have been violated *in this case*.

Therefore, insofar as petitioner argues that state prison officials have erroneously con-

---

**41.** *See Granberry v. Greer*, 481 U.S. at 135, 107 S.Ct. at 1675.

**42.** *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir.1994); *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir.1993); and *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir.1993).

**43.** *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir.1996), *cert. pending*; *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993), *cert. denied* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993); *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988); *Rault v. Butler*, 826 F.2d 299, 302 n. 1 (5th Cir.1987), *cert. denied*, 483 U.S. 1042, 108 S.Ct. 14, 97 L.Ed.2d 803 (1987); and *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir.1986), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986).

**44.** "[F]ederal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). *Accord Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir.1988). This Court does *not* review a state prisoner's federal habeas corpus petition to determine whether the state appellate courts correctly construed and applied state law. Federal habeas corpus relief does not lie for errors of state law. *See Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874; *Pemberton v. Collins*, 991 F.2d at 1223; *Lavernia v. Lynaugh*, 845 F.2d at 496; *Rault v. Butler*, 826 F.2d at 302 n. 1; and *Neyland v. Blackburn*, 785 F.2d at 1293.

**45.** *See Neyland v. Blackburn*, 785 F.2d 1283, 1289 (5th Cir.1986), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986).

**46.** *Coleman v. Thompson*, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991).

strued or applied applicable state statutes and parole regulations in his case but does not allege an attendant federal constitutional claim, his arguments do not furnish even an arguable basis for *federal* habeas corpus relief.

### D. *Denial of Release on Mandatory Supervision*

In his first claim for federal habeas relief, petitioner argues that state officials have erroneously treated his conviction as one for an aggravated offense and have wrongfully denied him release on mandatory supervision. However, the state courts found in the course of each of the petitioner's state habeas corpus proceedings that the petitioner had, in fact, entered a nolo contendere plea to a charge that he had assaulted an individual and caused serious bodily injuries by stabbing that person with a knife.[47] Petitioner has presented this Court with absolutely no specific factual allegations, much less any clear and convincing evidence, establishing that the offense to which he entered his nolo contendere plea on June 11, 1990 was *not* the offense of assault causing serious bodily injury, i.e., aggravated assault.[48]

The Judgment in petitioner's state trial court proceeding clearly and specifically indicates that the petitioner entered a plea of nolo contendere to a charge that he assaulted another person and caused serious bodily injury by stabbing his victim with a knife. At all times relevant to petitioner's offense, conviction, and sentence, under Texas law a criminal assault which caused serious bodily injury was, by definition, an *aggravated* assault.[49] At all times relevant to petitioner's offense, conviction, and sentence, under applicable Texas law a person convicted of *aggravated* assault was ineligible for release on mandatory supervision.[50] Thus, as a matter of applicable Texas law, petitioner has never been eligible for release on mandatory supervision in connection with his June, 1990 Bexar County aggravated assault conviction. For reasons made abundantly evident by even a cursory review of petitioner's trial court Judgment, petitioner has never been eligible for release on mandatory supervision in connection with his June, 1990 aggravated assault conviction.

Petitioner has identified no legal authority holding that Texas prisoners convicted of aggravated assault have a federally-protected constitutional right to release on mandatory supervision and this Court's independent research has revealed none. No court has ever construed the Texas statutes relating to mandatory supervision as creating such a federally-protected right on behalf of Texas prisoners whose offenses are expressly and specifically excluded from the parameters of the Texas mandatory supervision statute.[51]

Petitioner simply has no federal constitutional right, clearly established or otherwise, to release on mandatory supervision. Petitioner's claim that state officials erred somehow in treating his conviction for an assault causing serious bodily injury as an "aggravated" offense is itself erroneous. Therefore, his complaint that he has been denied release on mandatory supervision is *non sequitur*.

Under such circumstances, the rejection on the merits by the state courts of petitioner's claims that state officials had erroneously construed petitioner's offense as an aggravated one and that the petitioner had been wrongfully denied release on mandatory supervision were the products of neither unreasonable interpretations of clearly established federal law nor unreasonable determinations

---

**47.** *See* State Trial Court's Order of October 22, 1990, First State Habeas Corpus Records, at p. 9; and State Trial Court's Order of April 17, 1996, Second State Habeas Corpus Records, at p. 23.

**48.** Under the AEDPA, a federal habeas corpus petitioner faced with a adverse specific factual finding made by a state court has the burden of rebutting that finding by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**49.** *See* Section 22.02(a)(1), Texas Penal Code Annotated (Vernon 1989). The current version of this statute appears in virtually the same form. *See* Section 22.02(a)(1), Texas Penal Code Annotated (Vernon 1994).

**50.** *See* Article 42.18, § 8(c), Texas Code of Criminal Procedure Annotated (Vernon Supp.1997).

**51.** *See Madison v. Parker*, 104 F.3d at 768–69, (explaining the true nature of Texas statutes relating to release on mandatory supervision).

of the facts from the evidence presented to the state courts. Therefore, under the AED-PA, petitioner's first claim for federal habeas relief does not warrant same.

### E. *Denial of Good Time Credits*

■ In his second claim for federal habeas corpus relief, petitioner argues that he has wrongfully be denied good time credits he accrued prior to the revocation of his parole. However, at all times relevant to petitioner's offense, conviction, sentence, release on parole, and revocation of parole, Texas law provided that a person whose parole was revoked forfeited all previously accrued good time credits upon return to prison.[52] Moreover, a Texas prisoner's loss of good time credits does not involve any constitutionally-protected interest unless the prisoner is eligible for release on mandatory supervision.[53] Because petitioner is *not* statutorily eligible for release on mandatory supervision, his complaints regarding lost good time credits

are legally insufficient to present even an arguable basis for federal habeas relief.[54]

Under Texas law, good time credits only affect a prisoner's eligibility for release on parole or mandatory supervision.[55] Texas prisoners possess no constitutionally-protected right to release on parole.[56] Therefore, insofar as petitioner, whose is statutorily ineligible for release on mandatory supervision, may have been improperly deprived of good time credits, that claim does not provide a basis for federal habeas corpus relief.[57]

■ For the same reasons, insofar as petitioner complains that state officials have failed to reinstate good time credits that were forfeited when petitioner's parole was revoked, that complaint does not present a basis for federal habeas corpus relief.[58] There is no federal constitutional right to the restoration or reinstatement of good conduct time credits forfeited when the prisoner's parole was revoked.[59]

**52.** *See Ex parte Palomo*, 759 S.W.2d 671, 673 (Tex.Crim.App.1988); and *Ex parte Henderson*, 645 S.W.2d 469, 471–72 (Tex.Crim.App.1983). At the time of petitioner's offense, the operative Texas statute regarding the revocation of parole or mandatory supervision was former Article 6181–1, § 4, Texas Revised Civil Statutes Annotated (Vernon Supp.1977). Effective September 1, 1989, the Texas Legislature re-codified that statutory provision as former Section 497.004(b) of the Texas Government Code Annotated (Vernon 1990). More recently, the Texas Legislature again re-codified that statutory provision as current Section 498.004(b), Texas Government Code Annotated (Vernon Supp.1997). At all times relevant to petitioner's case, however, Texas law provided that a person whose release on parole or mandatory supervision was revoked forfeited all good time credits previously accrued upon their return to prison.

**53.** See *Madison v. Parker*, 104 F.3d at 768–69.

**54.** *Id.*

**55.** *See* Section 498.004, Texas Government Code Annotated (Vernon Supp.1997).

**56.** *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979). The Fifth Circuit has repeatedly rejected efforts by Texas prisoners to assert a constitutionally-protected interest arising out of state parole statutes. *See Madison v. Parker*, 104 F.3d at 768; *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir.1995); *Orellana v.*

*Kyle* 65 F.3d 29, 31–32 (5th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir.1993); *Creel v. Keene*, 928 F.2d 707, 709–12 (5th Cir. 1991), *cert. denied*, 501 U.S. 1210, 111 S.Ct. 2809, 115 L.Ed.2d 982 (1991); and *Williams v. Briscoe*, 641 F.2d 274, 276 (5th Cir.1981), *cert. denied*, 454 U.S. 854, 102 S.Ct. 299, 70 L.Ed.2d 147 (1981).

**57.** *See Madison v. Parker*, 104 F.3d at 768–68.

**58.** *See Madison v. Parker*, 104 F.3d at 768–69.

**59.** *See Granville v. Hogan*, 591 F.2d 323, 324 (5th Cir.1979), (recognizing the "well-established rule" that parole violators forfeit good time credits and time spent on conditional release) *Lambert v. Warden. U.S. Penitentiary*, 591 F.2d 4, 8 (5th Cir.1979), (holding that a federal parole violator loses both previously accrued good time credits and credit for time spent on conditional release when his parole is revoked); *Lazard v. United States*, 583 F.2d 176, 177 (5th Cir.1978), (holding that the Parole Commission had the authority to revoke the good time credits as well as credit for time spent on conditional release when it revoked a federal prisoner's mandatory release); and *Smith v. Blackwell*, 367 F.2d 539, 541 (5th Cir.1966), (holding that, by violating parole, a federal prisoner forfeits all credit for good conduct time accumulated prior to release and all credit for time on parole).

■ Insofar as petitioner argues that state officials violated applicable state law in refusing to restore petitioner's forfeited good time credits, that claim presents only an issue of state law and does not warrant federal habeas relief.[60]

For the foregoing reasons, none of the petitioner's complaints regarding the alleged denial of good time credits to him or the refusal of state officials to reinstate forfeited good time credits warrant federal habeas relief. Therefore, petitioner's second federal habeas corpus claim does not warrant federal habeas relief.

### F. "Double Jeopardy" Claim

■ While couched in the verbiage of a Double Jeopardy claim, petitioner's third claim for federal habeas corpus relief is, in reality, a complaint that petitioner has been denied credit against his sentence for the time he spent on parole prior to the revocation of same. However, as explained above, there is no federal constitutional right to credit for "street time" spent on parole or conditional release prior to the revocation of same.[61] Likewise, for the reasons set forth

at length above, petitioner's complaints that he lost accrued good time credits following the revocation of his parole are equally unavailing.[62]

■ Liberally construed, petitioner's "Double Jeopardy" argument appears to a complaint that in addition to the loss of freedom which accompanied the revocation of his parole, he also lost accrued good time credits he had earned during his prior incarceration when his parole was revoked and he was also denied any credit against his sentence for his "street time" spent on parole prior to the revocation of same. The Fifth Amendment's Double Jeopardy Clause provides three distinct protections, i.e., against a second prosecution following acquittal, against a second prosecution following conviction, and against multiple punishments for the same offense.[63] However, Double Jeopardy principles are *not* offended by the imposition of multiple punishments for the same criminal offense where the legislature has specifically authorized multiple punishments for the same criminal offense.[64] As explained above, at all times relevant to petitioner's offense, conviction, sentence, release on parole, and parole revo-

60. *See Estelle v. McGuire,* 502 U.S. at 67–68, 112 S.Ct. at 480; *Lewis v. Jeffers,* 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris,* 465 U.S. at 41, 104 S.Ct. at 874; *West v. Johnson,* 92 F.3d at 1404; *Pemberton v. Collins,* 991 F.2d at 1223; *Lavernia v. Lynaugh,* 845 F.2d at 496; *Rault v. Butler,* 826 F.2d at 302 n. 1; and *Neyland v. Blackburn,* 785 F.2d at 1293.

61. *See Newby v. Johnson,* 81 F.3d 567, 569 (5th Cir.1996), (holding that a claim by a state prisoner that he had been denied credit for his "street time" spent prior to the revocation of his parole did not raise a substantial federal question because the prisoner did not allege any procedural defect in his parole revocation proceeding). Petitioner herein has not challenged the revocation of his parole or otherwise identified any specific procedural or substantive error that occurred during his parole revocation proceeding.

62. Texas law has always provided that a parole forfeits all previously accrued good time credits upon the revocation of his parole. *See Ex parte Henderson,* 645 S.W.2d at 471–72. Because petitioner has never been statutorily eligible for release on mandatory supervision, any complaints he has regarding the alleged loss of good time credits do not raise a cognizable federal constitutional issue. *See Madison v. Parker,* 104 F.3d at 768–69.

63. *See Witte v. United States,* 515 U.S. 389, ——, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995); *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 769 n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994); *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *United States v. Cluck,* 87 F.3d 138, 140 (5th Cir.1996); and *United States v. Gonzalez,* 76 F.3d 1339, 1343 (5th Cir.1996).

64. *See United States v. Halper,* 490 U.S. at 451 & n. 10, 109 S.Ct. at 1903 & n. 10; *Missouri v. Hunter,* 459 U.S. 359, 365–67, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *United States v. Galan,* 82 F.3d 639, 640 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996), (holding that the imposition of disciplinary sanctions, including a loss of good time credits, did not bar a subsequent criminal prosecution based on the same misconduct); *United States v. Schinnell,* 80 F.3d 1064, 1067 n. 5 (5th Cir.1996); *Smallwood v. Johnson,* 73 F.3d 1343, 1350 & n. 9 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 212, 136 L.Ed.2d 146 (1996); *United States v. McCarty,* 36 F.3d 1349, 1361 (5th Cir.1994); *United States v. Holloway,* 905 F.2d 893, 894 (5th Cir.1990); and *United States v. Olivares–Martinez,* 767 F.2d 1135, 1139 (5th Cir. 1985).

cation, the Texas Legislature had specifically provided for the loss of accrued good time credits upon the revocation of parole and for the loss of "street time" credits for the time spent on parole prior to the revocation of same.[65]

At all times relevant to petitioner's offense, conviction, sentence, release on parole, and parole revocation, Texas law has provided that a person returned to prison following the revocation of his release on parole or mandatory supervision is *not* entitled to credit against his sentence for the time between his release and the revocation of his release.[66] Thus, Texas law has never created any constitutionally-protected liberty or property interest in "street time" credit against a criminal sentence for time spent on release on parole or on mandatory supervision prior to the revocation of same. It has been clear in this Circuit for almost three decades that a Texas prisoner has no constitutionally-protected right to credit against his state sentence for time served on parole prior to the revocation of same.[67] Furthermore, it is equally clear that federal prisoners released on parole possess no constitutionally-protected interest in credit against their sentences for time spent on parole prior to the revocation of same.[68]

**65.** See *Ex parte Palomo*, 759 S.W.2d 671, 673 (Tex.Crim.App.1988); and *Ex parte Henderson*, 645 S.W.2d at 471–72.

**66.** See *Ex parte Palomo*, 759 S.W.2d at 673; and *Ex parte Henderson*, 645 S.W.2d at 471–72. Current Texas law expressly and specifically denies credit for "street time" to persons whose parole, probation, or mandatory supervision is revoked following their release from prison. See Article 42.18, § 14(a), Texas Code of Criminal Procedure Annotated (Vernon Supp.1997). At the time of petitioner's offense, conviction, and sentence, a virtually identical statutory provision governed such matters. See Article 4212, § 22, Texas Code of Criminal Procedure Annotated (Vernon 1979). Petitioner has identified, and this Court's independent research has revealed, no intervening changes in Texas law which gave Texas prisoner's credit against their sentence for time spent on parole or mandatory supervision prior to the revocation of same.

**67.** See *Betts v. Beto*, 424 F.2d 1299, 1300 (5th Cir.1970); and *Clifton v. Beto*, 411 F.2d 1226, 1226 (5th Cir.1969).

Under such circumstances, the state habeas court's denial of petitioner's claims that state prison officials erroneously extended petitioner's original sentence, improperly forfeited petitioner's accrued good time credits, and improperly denied petitioner credit against his original sentence for time spent on parole prior to the revocation of same were the products of neither unreasonable applications of clearly established federal law nor an unreasonable determinations of the facts from the evidence. Therefore, petitioner's third claim for federal habeas corpus relief herein does not warrant same.

### G. Procedural Default and Broken Plea Bargain Claim

██ In his fourth and final claim for federal habeas corpus relief herein, petitioner argues that his plea bargain included an express provision under which the offense to which petitioner entered his nolo plea was to be non-aggravated but that the manner in which petitioner's amended indictment was crafted actually resulted in petitioner entering such a plea to an aggravated offense, i.e., assault causing serious bodily injury. Thus, it follows, that petitioner is complaining about an unkept plea bargain which rendered his nolo plea involuntary.

**68.** See *Cortinas v. United States Parole Commission*, 938 F.2d 43, 45–46 (5th Cir.1991), (recognizing that applicable federal statutes and parole regulations provide for the *mandatory* forfeiture of street time following revocation of parole); *Munguia v. United States Parole Commission*, 871 F.2d 517, 519–22 (5th Cir.1989), cert. denied, 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989), (holding the same); *United States v. Newton*, 698 F.2d 770, 772 (5th Cir.1983), (holding that a federal parolee forfeits his time on parole when he is convicted of a new offense following his release on parole) *Frick v. Quinlin*, 631 F.2d 37, 39 (5th Cir.1980), (acknowledging the petitioner's concession that the law authorized the parole commission to forfeit good time credits earned during a prior period of incarceration and to deny the revoked parolee any credit for time served on parole prior to revocation); and *Starnes v. Connett*, 464 F.2d 524, 524 (5th Cir. 1972), cert. denied, 409 U.S. 987, 93 S.Ct. 341, 34 L.Ed.2d 253 (1972), (holding that it is "firmly established" that time spent on parole does not operate to reduce the sentence of a parole violator returned to prison).

However, the respondent has specifically raised the defense of procedural default in opposition to petitioner's unkept plea bargain claim. Respondent argues that petitioner failed to present this same claim in the course of either of petitioner's state habeas corpus proceedings and that the Texas statutory version of the abuse of the writ doctrine would necessarily bar petitioner from presented that same claim in a successive state habeas corpus proceeding filed at this juncture. Petitioner has filed no response whatsoever to either the respondent's motion for summary judgment or respondent's procedural default argument. While petitioner was permitted by the state courts to file a second state habeas corpus application, the state courts did so only after specifically finding that the issues raised by the petitioner in his second state habeas application could not have been raised at the time petitioner filed his first such application.[69]

Respondent is correct that the Supreme Court and Fifth Circuit have both recognized that a failure to comply with state procedural rules can constitute a barrier to federal habeas review of a state prisoner's federal constitutional claim.[70] Respondent is also correct that the Texas statutory abuse of the writ doctrine appears to present a complete barrier to petitioner's assertion of his unkept plea bargain claim in a successive state habeas corpus proceeding.[71] Petitioner raised a challenge as to the voluntariness of his nolo plea in his first state habeas corpus proceeding and has presented this Court with absolutely no allegations establishing that any external impediment prevented him from presenting his new unkept plea bargain claim in either his first or second state habeas corpus proceedings. Likewise, petitioner has alleged no facts establishing that his new unkept plea bargain claim was unavailable at the time he filed either of his two state habeas corpus applications.

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas corpus claim when the state based its rejection of the same claim on an adequate and independent state ground.[72] When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.[73] Generally speaking, in order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default as an independent and adequate ground for denying relief.[74] Where a state court

---

69. *See* Second State Habeas Corpus Records, at p. 23. More specifically, the state trial court found that the issues raised in petitioner's second state habeas corpus application, which related solely to the after-effects of the revocation of petitioner's parole in 1994, could not have been raised at the time of petitioner's first state habeas proceeding in 1990.

70. *See Rogers v. Scott*, 70 F.3d 340, 342 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *Nichols v. Scott*, 69 F.3d 1255, 1278 n. 44 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); and *Amos v. Scott*, 61 F.3d 333, 338–45 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995). In each of these opinions, the Fifth Circuit held that a federal habeas petitioner's failure to comply with the Texas contemporaneous objection rule constituted a procedural barrier to obtaining federal habeas review of alleged trial court errors.

71. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2603, 132 L.Ed.2d 847 (1995), (holding that the Texas abuse of the writ doctrine constituted an adequate and independent basis for a federal

habeas court's refusal to address the merits of a federal habeas corpus petitioner's claims). The Texas abuse of the writ statute is set forth in Article 11.07, § 4 of the Texas Code of Criminal Procedure Annotated (Vernon Supp.1997).

72. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir.1996); and *Young v. Herring*, 938 F.2d 543, 548 n. 5 (5th Cir.1991), *cert. denied,* 503 U.S. 940, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992).

73. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991); *Murray v. Carrier*, 477 U.S. 478, 485–92, 106 S.Ct. 2639, 2643–48, 91 L.Ed.2d 397 (1986); and *Sawyers v. Collins*, 986 F.2d 1493, 1499 (5th Cir.1993), *cert. denied,* 508 U.S. 933, 113 S.Ct. 2405, 124 L.Ed.2d 300 (1993).

74. See *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), (holding that an adequate and independent finding of a procedural bar will bar federal habeas review of a federal claim unless the habeas petition can

finds that a federal claim is procedurally barred, but goes on to reach the merits of that claim in the alternative, the state court's reliance on the procedural default still constitutes an independent and adequate ground which bars federal habeas review.[75] A state procedural rule is adequate for purposes of procedural default in a federal habeas proceeding only if it is firmly established at the time it is applied, i.e., it is strictly or regularly applied evenhandedly to the vast majority of similar claims.[76]

Ordinarily, the mere fact that a federal habeas corpus claimant failed to abide by a state procedural rule does *not*, in and of itself, prevent federal review of a claim; the state court must actually have relied upon the procedural bar as an independent basis for its disposition of the case.[77] A federal claimant's procedural default usually precludes federal habeas review *only* if the last state court rendering a judgment in the case rests. its judgment on the procedural default.[78] The federal courts presume there is no independent and adequate state ground for a state court decision when (1) the decision fairly appears to rest primarily on federal law, (2) the decision fairly appears to be interwoven with the federal law, or (3) the adequacy and independence of any possible state law ground is not clear from the face of the opinion.[79] When the last state court to write a reasoned opinion rests its decision on a claim for relief on state procedural grounds, the petitioner can still obtain federal habeas review of that same claim only if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice.[80] To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that petitioner's trial counsel rendered ineffective assistance.[81] In order to satisfy the "miscarriage

show "cause" for the default and "prejudice attributable thereto" or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice."; *Martin v. Maxey,* 98 F.3d 844, 847 (5th Cir.1996); *Moore v. Roberts,* 83 F.3d 699, 702 (5th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997); *Reed v. Scott,* 70 F.3d 844, 846 (5th Cir.1995), *cert. denied sub nom. Johnson v. Reed,* — U.S. —, 116 S.Ct. 1452, 134 L.Ed.2d 570 (1996); and *Amos v. Scott,* 61 F.3d 333, 338–39 (5th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995). See *also Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991), (holding that a federal court may address a federal claim on which there has been a finding of state procedural default if the last state court opinion disposing of the claim appears to rest primarily upon federal law, or to be interwoven with the federal law, or when the adequacy and independence of any possible state law ground is not clear from the face of the opinion); and *Ylst v. Nunnemaker,* 501 U.S. at 803–04, 111 S.Ct. at 2595.

**75.** See *Harris v. Reed,* 489 U.S. at 264 & n. 10, 109 S.Ct. at 1044 & n. 10; *Rogers v. Scott,* 70 F.3d at 342; and *Sawyers v. Collins,* 986 F.2d at 1499. Where it is unclear whether the state court's judgment rests on state procedural grounds or on the merits of the federal claim, the basis for the state court judgment is identified by the following analysis: (1) where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon the same ground; (2) if an earlier opinion "fairly

appears" to rest primarily upon federal law, we presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place; and (3) where the last reasoned opinion on the claim explicitly imposes a procedural default, the presumption is that a later decision rejecting the claim did not silently disregard that bar and consider the merits—but this presumption can be overcome by strong evidence that the subsequent rejection of the claim was based on an analysis of the merits of the federal claim. See *Sawyers v. Collins,* 986 F.2d at 1499–1500.

**76.** See *Martin v. Maxey,* 98 F.3d at 847; *Reed v. Scott,* 70 F.3d at 846; and *Amos v. Scott,* 61 F.3d at 339.

**77.** *Harris v. Reed,* 489 U.S. at 261–62, 109 S.Ct. at 1042.

**78.** *Harris v. Reed,* 489 U.S. at 262, 109 S.Ct. at 1043; *Caldwell v. Mississippi,* 472 U.S. 320. 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985).

**79.** *Coleman v. Thompson,* 501 U.S. at 734–35, 111 S.Ct. at 2557.

**80.** See *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. at 2565; *Harris v. Reed,* 489 U.S. at 262, 109 S.Ct. at 1043; and *Moore v. Roberts,* 83 F.3d at 702.

**81.** See *Martin v. Maxey,* 98 F.3d at 849; and *Hill v. Black,* 932 F.2d 369, 372–73 (5th Cir.1991).

of justice" test, the petitioner must supplement his constitutional claim with a colorable showing of factual innocence.[82] To satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.[83]

At first glance, the problem with respondent's reliance on petitioner's failure to present his unkept plea bargain claim in the course of either of petitioner's first two state habeas corpus proceedings is that no Texas court has ever held that such failure warranted rejection of any of the arguments petitioner presents to this Court as a basis for federal habeas relief.[84] However, it is well-settled that if a federal habeas petitioner failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, then there is

a procedural default for purposes of federal habeas corpus review.[85] The rule in *Harris* referenced above is inapplicable where the federal habeas corpus claim was *never* presented to the state courts.[86]

Petitioner has not alleged any facts showing that he was prevented by some external impediment from including his unkept plea bargain claim presented to this Court in his initial or second state habeas corpus proceeding. Likewise, petitioner has failed to allege any facts establishing that petitioner suffered "actual prejudice" as a result of his purported inability to present his unkept plea bargain claim to the state courts.[87] Petitioner has alleged no facts establishing that his unkept plea bargain claim was unavailable to him, despite the exercise of due diligence on his part, at the time he filed his initial state habeas corpus application. Under such circumstances, petitioner has failed to overcome the respondent's assertion of procedural de-

**82.** See *Sawyer v. Whitley*, 505 U.S. 333, 335–36, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992); *May v. Collins*, 955 F.2d 299, 308 (5th Cir.1992), cert. denied, 504 U.S. 901, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992); and *Sawyer v. Whitley*, 945 F.2d 812, 815 (5th Cir.1991), affirmed 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). These opinions each discuss the "miscarriage of justice" exception to the cause and prejudice test for successive federal habeas petitions. Basically, that exception provides that reconsideration of a ground for relief that was disposed of on the merits in a prior federal habeas proceeding is permissible *only* when the petitioner establishes a "fair probability" that, in light of all the evidence, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. See *Sawyer v. Whitley*, 505 U.S. at 339 & n. 5, 112 S.Ct. at 2519 & n. 5; *May v. Collins*, 955 F.2d at 308; and *Sawyer v. Whitley*, 945 F.2d at 817.

**83.** See *Sawyer v. Whitley*, 505 U.S. at 335–40, 112 S.Ct. at 2517–19, (holding that to show "actual innocence" in the context of a capital sentencing scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state statute and that "factual innocence" means a fair probability that, in light of all the evidence, the trier of the facts would have entertained a reasonable doubt as to the defendant's guilt); *Kuhlmann v. Wilson*, 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986); *Johnson v. Hargett*, 978 F.2d 855, 859–60 (5th Cir.1992), cert. denied, 507 U.S. 1007, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993); *May v.*

*Collins*, 955 F.2d at 308; and *Sawyer v. Whitley*, 945 F.2d at 817.

**84.** See *Harris v. Reed*, 489 U.S. at 261–62, 109 S.Ct. at 1042.

**85.** See *Coleman v. Thompson*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1; *Teague v. Lane*, 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989); *Nichols v. Scott*, 69 F.3d at 1280; and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995).

**86.** See *Teague v. Lane*, 489 U.S. at 299, 109 S.Ct. at 1069; and *Nichols v. Scott*, 69 F.3d at 1280.

**87.** The state courts rejected the involuntary plea claim which petitioner included in his first state habeas corpus proceeding. That claim was premised upon petitioner's misunderstanding of applicable Texas law and his erroneous recollection of the facts of his case. In his first state habeas corpus proceeding, petitioner argued that his nolo plea was involuntary because he had relied upon his trial counsel's allegedly erroneous advice that petitioner was eligible to receive a probated sentence when he decided to enter his nolo plea. The state trial court (1) specifically concluded in the course of petitioner's first state habeas corpus proceeding that petitioner was, in fact, statutorily eligible to receive a probated sentence, (2) found that petitioner's trial counsel had correctly advised petitioner of that fact, and (3) found that petitioner's trial counsel had orally requested same but that the state trial court had denied that request, as was within the sentencing court's discretion.

fault in connection with petitioner's unkept plea bargain claim in this federal habeas corpus proceeding and this Court is, therefore, unable to address the merits of same. For the foregoing reasons, petitioner's fourth and final claim for federal habeas corpus relief herein does not warrant same.

### III. *Conclusions*

Petitioner's complaints regarding the manner in which state officials have construed his aggravated offense, denied him release on mandatory supervision, forfeited his accrued good time credits, and denied him credit against his sentence for "street time" spent on parole prior to the revocation of same are all premised upon faulty interpretations of applicable Texas law. Petitioner possessed no federal constitutional right to either credit against his sentence for time spent on parole prior to the revocation of same or to the restoration of good time credits forfeited when his parole was revoked. Petitioner's Double Jeopardy claim is foreclosed by well-settled authority providing that multiple punishments for the same criminal conduct are permissible so long as the Legislature has expressly authorized same. Petitioner procedurally defaulted on his eleventh hour assertion that his nolo contendere plea was the product of an unkept plea bargain by failing to present that claim as part of his initial state habeas corpus application. For the foregoing reasons, petitioner's federal habeas corpus petition does not warrant federal habeas relief.

Accordingly, it is hereby **ORDERED** that:

1. The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

2. Respondent's motion to dismiss for failure to exhaust [88] and supplemental motion to dismiss for failure to exhaust [89] are each **DENIED.**

3. Petitioner's federal habeas corpus petition [90] is, in all respects, **DENIED.**

4. All other pending motions are **DISMISSED AS MOOT.**

---

88. *See* docket entry no. 4.

89. *See* docket entry no. 12.

90. *See* docket entry nos. 3 and 7. Out of an abundance of caution for petitioner's *pro se* sta-

5. The Clerk shall prepare and enter a Judgment consistent with this Memorandum Opinion and Order.

tus, this Court has liberally construed both of these pleadings together as if they were petitioner's federal habeas corpus petition herein.